U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 AUG -4 PM 12: 12

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| AARON BRUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-155 |
| | ) | |
| OLD NAVY LLC, SCOTT GRAHAM, TIMOTHY OLIVER, AND TOWN OF WILLISTON, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY**
(Doc. 89)

Pending before the court is Plaintiff's motion to exclude testimony by John J. Ryan, an expert witness proffered by Defendants Scott Graham, Timothy Oliver, and Town of Williston (collectively, the "Municipal Defendants") (Doc. 89).

Plaintiff is represented by David E. Bond, Esq. Defendant Graham is represented by Kevin L. Kite, Esq. Defendant Oliver is represented by Michael J. Leddy, Esq. Defendant Town of Williston is represented by Marikate E. Kelley, Esq. and Philip C. Woodward, Esq. Defendant Old Navy LLC ("Old Navy"), which has not taken a position on the pending motion, is represented by Melinda J. Caterine, Esq.

**I.    Factual and Procedural Background.**

The following facts are set forth in Plaintiff's Complaint. Plaintiff Aaron Brush is a resident of Middlebury, Vermont who suffers from Tourette's Syndrome. His symptoms include involuntary movements and vocalizations and obsessive-compulsive tendencies.

On the night of Thanksgiving 2019, Plaintiff was shopping for Black Friday deals in Williston, Vermont, and spent two and a half hours shopping at Old Navy. He tried on numerous items of clothing and had one interaction with a store employee. Store

employees allegedly identified Plaintiff as a potential shoplifter because of his involuntary movements and vocalizations and called the Williston Police Department. Defendants Graham and Oliver, who were Williston police officers at the time, responded to the call.

Plaintiff was still trying on clothes when Defendants Graham and Oliver arrived at Old Navy. Defendants Graham and Oliver spoke with store employees and agreed to wait outside until store employees signaled to them. Plaintiff waited in line for approximately thirty minutes and purchased approximately $250 of clothing.

As he left Old Navy, Plaintiff was stopped by Defendants Graham and Oliver even though store employees had not signaled to them. Plaintiff was asked for identification, his sales receipt, and was allegedly told he was not free to leave. He was informed that he was a "suspicious person" and that he appeared to be under the influence of drugs or alcohol. (Doc. 9 at 4, ¶ 20.) Plaintiff informed Defendants Graham and Oliver that he suffered from Tourette's Syndrome. He was detained outside for twenty minutes while Defendant Graham took his sales receipt and purchases into Old Navy.

Defendant Graham allegedly told Old Navy employees that they could issue a no trespass order to anyone for any reason. Defendant Graham returned from the store and informed Plaintiff that Old Navy was issuing a no trespass order against him and handed him a copy of that order. The no trespass order allegedly remains in effect.

Plaintiff claims his detention and the no trespass order caused him to become depressed and seek mental health counseling. He asserts that Old Navy intentionally discriminated against him because of his disability by calling the police, causing them to detain him, and issuing a no trespass order.

On May 5, 2021, Plaintiff filed a Complaint in Vermont Superior Court, Addison Unit, alleging four causes of action: disability discrimination in violation of 9 V.S.A. § 4502 against Old Navy (Count I); false imprisonment against Old Navy and Defendants Graham and Oliver (Count II); a 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights against Defendants Graham and Oliver (Count III); and a 42 U.S.C. § 1983 claim against the Town of Williston for failure to properly train and supervise

Defendants Graham and Oliver (Count IV).[1] In Count IV, Plaintiff cites a 2018 news article about an investigation which found a lack of effective oversight in the Williston Police Department as well as a 2021 news article about the Town of Williston's termination of Defendants Graham and Oliver for conduct unrelated to this case.

On January 28, 2022, Municipal Defendants disclosed Mr. Ryan as an expert witness and submitted his expert report pursuant to Fed. R. Civ. P. 26(a)(2). On February 10, 2022, Plaintiff moved to exclude Mr. Ryan's testimony (Doc. 89). Municipal Defendants filed an opposition in response on February 22, 2022 (Doc. 94) and Plaintiff replied on March 3, 2022 (Doc. 99). After a hearing on March 4, 2022, the court took the pending motion under advisement.

## II.   Conclusions of Law and Analysis.

Municipal Defendants seek to introduce Mr. Ryan's testimony regarding the lawfulness and appropriateness of the actions of Defendants Graham and Oliver during their encounter with Plaintiff, and the adequacy of the supervision and training provided by Defendant Town of Williston. Plaintiff objects to the "large majority" of Mr. Ryan's testimony as representing "statements as to what the law provides or conclusions as to ultimate facts[,]" and provides the following "not exhaustive" list of objectionable portions of his proposed testimony:

> "[T]he decision[] . . . to . . . detain . . . Mr. Brush was consistent with generally accepted policies, practices, training, and legal mandates trained to officers . . . ." [Doc. 89-1 at 22,] ¶ 37.
>
> "Based on generally accepted policies, practices, training, and legal mandates trained to officers . . . a reasonable and well-trained officer would conclude that the brief detention of Mr. Brush . . . was a temporary investigative detention." [Doc. 89-1 at 24,] ¶ 41.
>
> "Here, based on the reports of the dispatcher a reasonable and well-trained officer would conclude that a stop was consistent with industry standard based on suspicion of shoplifting, danger to the public, and/or the community caretaking function . . . ." *Id.*
>
> "Based on this totality of circumstances a reasonable and well-trained

---

[1] In the Complaint, both the third and fourth counts are styled Count III. This appears to be a typographical error.

> officer would recognize that a stop of Brush . . . would be consistent with generally accepted policies, practices, training, industry standard, and the legal mandates trained to officers . . . ." [Doc. 89-1 at 25,] ¶ 42 (emphasis added).
>
> "Officers throughout the United States are trained that there is no set time limit on a temporary investigative detention but rather, they must act diligently to confirm or dispel their suspicions. There is nothing in the materials provided to date that would suggest that the officers were not acting diligently." [Doc. 89-1 at 27,] ¶ 46.

(Doc. 89 at 1-2) (alterations, except to internal citations, in original). Plaintiff asks the court to exclude Mr. Ryan's testimony "in its entirety[.]" *Id.* at 4.

Municipal Defendants point out that Mr. Ryan's use of the phrase "consistent with legal mandates" occurs only four times in the course of his twenty-six page report and contend the phrase is not a legal standard but a "summation of his opinion on a number of points[.]" (Doc. 94 at 5.) They argue Plaintiff's motion is premature and overbroad.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 imposes on the court a "gatekeeping" obligation that includes the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

It is black letter law that "expert testimony that states a legal conclusion or 'communicat[es] a legal standard—explicit or implicit—to the jury' is inadmissible." *McLaughlin v. Langrock, Sperry & Wool, LLP*, 2020 WL 3118646, at *7 (D. Vt. June 12, 2020) (alteration in original) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash.*

4

*Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).

Mr. Ryan's report is replete with legal standards and conclusions of law on issues such as investigatory stops, probable cause and detention standards. Citing legal standards as they appear in training materials and opining that an officer's actions are "consistent with . . . legal mandates trained to officers[,]" (Doc. 89-1 at 22, ¶ 37), still "communicat[es]" a legal conclusion that must be excluded. *McLaughlin*, 2020 WL 3118646, at *7 (quoting *Hygh*, 961 F.2d at 364); *see also United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (holding an inadmissible legal conclusion "may not be made [admissible] simply because it is presented in terms of industry practice").

For example, whether police have reasonable suspicion to stop a person "is a legal determination that is not properly the subject of expert opinion testimony." *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (quoting *Rizzo v. Edison Inc.*, 419 F. Supp. 2d 338, 348 (W.D.N.Y.2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006)) (addressing determination of probable cause); *see also United States v. Bold*, 19 F.3d 99, 102 (2d Cir. 1994) (holding "whether the police had reasonable suspicion" is a "legal conclusion"). As a result, Mr. Ryan is not permitted to testify that Defendants Graham and Oliver had reasonable suspicion to stop Plaintiff in light of his conduct in the store. Nor may Mr. Ryan offer testimony as to (1) the legal distinctions between consensual contacts, investigatory stops, and arrests, *see* Doc-89-1 at 22-23, ¶ 39; (2) the type of stop to which Plaintiff was subjected, *see id.* at 23, ¶ 40; (3) the legal standards for reasonable suspicion and probable cause, *see id.* at 23-24, ¶¶ 41-42; (4) the legal standards for evaluating the reasonableness of the scope and duration of an investigatory stop, including an officer's duty to diligently dispel or confirm their suspicions, *see id.* at 24, 27 ¶¶ 41, 46; (5) the legal standards for evaluating the reliability of informants, *see id.* at 25-26, ¶¶ 43-44; or (6) the legal standards for the use of hearsay and other evidence in establishing reasonable suspicion or probable cause, *see id.* at 26, ¶ 45.

Plaintiff argues that all of Mr. Ryan's remaining testimony regarding generally accepted police practices should be excluded because it embraces ultimate issues that are of "constitutional dimension" and for the jury to decide. (Doc. 99 at 3.) In general, "[a]n

5

opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). "The basic approach to opinions, lay and expert, . . . is to admit them when helpful to the trier of fact." Fed. R. Evid. 704, Advisory Committee Notes. "This 'helpfulness requirement is designed to provide assurance[] against the admission of opinions which would merely tell the jury what result to reach' or would constitute an attempt 'to introduce meaningless assertions which amount to little more than choosing up sides.'" *Cameron*, 598 F.3d at 62 (quoting *United States v. Rea*, 958 F.2d 1206, 1215-16 (2d Cir. 1992)).

Courts in the Second Circuit have regularly "allowed expert testimony on whether police procedures or actions are consistent with generally accepted police practices." *Fate v. Vill. of Spring Valley*, 2013 WL 2649548, at *5 (S.D.N.Y. June 13, 2013); *see also Vazquez v. City of New York*, 2014 WL 4388497, at *13 (S.D.N.Y. Sept. 5, 2014) ("Courts in and out of this Circuit routinely admit testimony on police practices in civil rights cases of this sort.") (collecting cases). As the Second Circuit explained:

> "When an expert offers an opinion relevant to applying a legal standard such as probable cause . . . , the expert's role is limited to describing sound professional standards and identifying departures from them," *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (internal quotation marks omitted) . . . . [The] expert['s] testimony on applicable professional standards is relevant because it "can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Id.* at 721–22. It is true that [the expert's] "opinions had direct implications for applying legal standards," but that is exactly "why his testimony was relevant." *Id.* at 721.

*Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017).

Mr. Ryan's testimony as to generally accepted police practices and departures from those standards may be helpful to the jury's determination of the Municipal Defendants' *mens rea*. *See Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.") (footnote and citation omitted). In addition, Mr. Ryan's testimony

6

regarding Defendant Town of Williston's training and supervision practices may be helpful in evaluating Plaintiff's claims pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Courts have recognized that, for a *Monell* failure to train or supervise claim, an expert witness may be helpful in explaining generally accepted standards of training and supervision. *See, e.g.*, *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992) (holding expert testimony should be admitted "[e]specially in the context of a failure to train claim" and is "particularly appropriate where, as here, the conclusions rest directly upon the expert's review of materials provided by the [municipality] itself"). While Mr. Ryan may not "present testimony in the form of legal conclusions[,]" *Cameron*, 598 F.3d at 62 (citation omitted), he may testify as to "whether police procedures or actions are consistent with generally accepted police practices[.]" *Fate*, 2013 WL 2649548, at *5.

    Finally, Plaintiff argues that Mr. Ryan should not serve as a conduit for the facts in this case. The court agrees. Mr. Ryan has no personal knowledge of the facts and offers nothing beyond a conduit for hearsay in his recitation of the facts. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (quoting *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) ("Although the Rules permit experts some leeway with respect to hearsay evidence, Fed. R. Evid. 703, 'a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.'"). He may therefore rely on the facts in forming his opinions, but his testimony cannot serve as the sole basis by which those facts are admitted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to exclude expert testimony (Doc. 89) is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___4th___ day of August, 2022.

Christina Reiss, District Judge
United States District Court